# PIPER AIRCRAFT CO. *v.* REYNO, PERSONAL REPRESENTATIVE OF THE ESTATES OF FEHILLY ET AL.

No. 80–848.   Argued October 14, 1981—Decided December 8, 1981*

---

*Together with No. 80–883, *Hartzell Propeller, Inc.* v. *Reyno, Personal Representative of the Estates of Fehilly et al.*, also on certiorari to the same court.

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN and REHNQUIST, JJ., joined, and in Parts I and II of which WHITE, J., joined. WHITE J., filed an opinion concurring in part and dissenting in part, *post*, p. 261. STEVENS, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 261. POWELL, J., took no part in the decision of the cases. O'CONNOR, J., took no part in the consideration or decision of the cases.

*James M. Fitzsimons* argued the cause for petitioner in No. 80–848. With him on the brief were *Charles J. McKelvey, Ann S. Pepperman,* and *Keith A. Jones. Warner W. Gardner* argued the cause for petitioner in

No. 80–883.   With him on the briefs were *Nancy J. Breg-stein* and *Ronald C. Scott.*

*Daniel C. Cathcart* argued the cause and filed a brief for respondent in both cases.†

JUSTICE MARSHALL delivered the opinion of the Court.

These cases arise out of an air crash that took place in Scotland.   Respondent, acting as representative of the estates of several Scottish citizens killed in the accident, brought wrongful-death actions against petitioners that were ultimately transferred to the United States District Court for the Middle District of Pennsylvania.   Petitioners moved to dismiss on the ground of *forum non conveniens.*   After noting that an alternative forum existed in Scotland, the District Court granted their motions.   479 F. Supp. 727 (1979).   The United States Court of Appeals for the Third Circuit reversed.   630 F. 2d 149 (1980).   The Court of Appeals based its decision, at least in part, on the ground that dismissal is automatically barred where the law of the alternative forum is less favorable to the plaintiff than the law of the forum chosen by the plaintiff.   Because we conclude that the possibility of an unfavorable change in law should not, by itself, bar dismissal, and because we conclude that the District Court did not otherwise abuse its discretion, we reverse.

I

A

In July 1976, a small commercial aircraft crashed in the Scottish highlands during the course of a charter flight from

---

†*John D. Dillow, Samuel F. Pearce, John J. Hennelly, Jr.,* and *Thomas C. Walsh* filed a brief for Boeing Co. et al. as *amici curiae* urging reversal.

*Thomas G. Smith* filed a brief for the Law Offices of Gerald C. Stearns as *amicus curiae* urging affirmance.

Blackpool to Perth. The pilot and five passengers were killed instantly. The decedents were all Scottish subjects and residents, as are their heirs and next of kin. There were no eyewitnesses to the accident. At the time of the crash the plane was subject to Scottish air traffic control.

The aircraft, a twin-engine Piper Aztec, was manufactured in Pennsylvania by petitioner Piper Aircraft Co. (Piper). The propellers were manufactured in Ohio by petitioner Hartzell Propeller, Inc. (Hartzell). At the time of the crash the aircraft was registered in Great Britain and was owned and maintained by Air Navigation and Trading Co., Ltd. (Air Navigation). It was operated by McDonald Aviation, Ltd. (McDonald), a Scottish air taxi service. Both Air Navigation and McDonald were organized in the United Kingdom. The wreckage of the plane is now in a hangar in Farnsborough, England.

The British Department of Trade investigated the accident shortly after it occurred. A preliminary report found that the plane crashed after developing a spin, and suggested that mechanical failure in the plane or the propeller was responsible. At Hartzell's request, this report was reviewed by a three-member Review Board, which held a 9-day adversary hearing attended by all interested parties. The Review Board found no evidence of defective equipment and indicated that pilot error may have contributed to the accident. The pilot, who had obtained his commercial pilot's license only three months earlier, was flying over high ground at an altitude considerably lower than the minimum height required by his company's operations manual.

In July 1977, a California probate court appointed respondent Gaynell Reyno administratrix of the estates of the five passengers. Reyno is not related to and does not know any of the decedents or their survivors; she was a legal secretary to the attorney who filed this lawsuit. Several days after her appointment, Reyno commenced separate wrongful-

death actions against Piper and Hartzell in the Superior Court of California, claiming negligence and strict liability.[1] Air Navigation, McDonald, and the estate of the pilot are not parties to this litigation. The survivors of the five passengers whose estates are represented by Reyno filed a separate action in the United Kingdom against Air Navigation, McDonald, and the pilot's estate.[2] Reyno candidly admits that the action against Piper and Hartzell was filed in the United States because its laws regarding liability, capacity to sue, and damages are more favorable to her position than are those of Scotland. Scottish law does not recognize strict liability in tort. Moreover, it permits wrongful-death actions only when brought by a decedent's relatives. The relatives may sue only for "loss of support and society."[3]

On petitioners' motion, the suit was removed to the United States District Court for the Central District of California. Piper then moved for transfer to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U. S. C. § 1404(a).[4] Hartzell moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer.[5] In December 1977, the District Court quashed service on

---

[1] Avco-Lycoming, Inc., the manufacturer of the plane's engines, was also named as a defendant. It was subsequently dismissed from the suit by stipulation.

[2] The pilot's estate has also filed suit in the United Kingdom against Air Navigation, McDonald, Piper, and Hartzell.

[3] See Affidavit of Donald Ian Kerr MacLeod, App. A19 (affidavit submitted to District Court by petitioners describing Scottish law). Suits for damages are governed by The Damages (Scotland) Act 1976.

[4] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[5] The District Court concluded that it could not assert personal jurisdiction over Hartzell consistent with due process. However, it decided not to dismiss Hartzell because the corporation would be amenable to process in Pennsylvania.

Hartzell and transferred the case to the Middle District of Pennsylvania. Respondent then properly served process on Hartzell.

## B

In May 1978, after the suit had been transferred, both Hartzell and Piper moved to dismiss the action on the ground of *forum non conveniens*. The District Court granted these motions in October 1979. It relied on the balancing test set forth by this Court in *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501 (1947), and its companion case, *Koster* v. *Lumbermens Mut. Cas. Co.*, 330 U. S. 518 (1947). In those decisions, the Court stated that a plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. *Koster, supra,* at 524. To guide trial court discretion, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the convenience of the forum. *Gilbert, supra,* at 508–509.[6]

---

[6] The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U. S., at 508. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.,* at 509.

After describing our decisions in *Gilbert* and *Koster*, the District Court analyzed the facts of these cases. It began by observing that an alternative forum existed in Scotland; Piper and Hartzell had agreed to submit to the jurisdiction of the Scottish courts and to waive any statute of limitations defense that might be available. It then stated that plaintiff's choice of forum was entitled to little weight. The court recognized that a plaintiff's choice ordinarily deserves substantial deference. It noted, however, that Reyno "is a representative of foreign citizens and residents seeking a forum in the United States because of the more liberal rules concerning products liability law," and that "the courts have been less solicitous when the plaintiff is not an American citizen or resident, and particularly when the foreign citizens seek to benefit from the more liberal tort rules provided for the protection of citizens and residents of the United States." 479 F. Supp., at 731.

The District Court next examined several factors relating to the private interests of the litigants, and determined that these factors strongly pointed towards Scotland as the appropriate forum. Although evidence concerning the design, manufacture, and testing of the plane and propeller is located in the United States, the connections with Scotland are otherwise "overwhelming." *Id.*, at 732. The real parties in interest are citizens of Scotland, as were all the decedents. Witnesses who could testify regarding the maintenance of the aircraft, the training of the pilot, and the investigation of the accident—all essential to the defense—are in Great Britain. Moreover, all witnesses to damages are located in Scotland. Trial would be aided by familiarity with Scottish topography, and by easy access to the wreckage.

The District Court reasoned that because crucial witnesses and evidence were beyond the reach of compulsory process, and because the defendants would not be able to implead potential Scottish third-party defendants, it would be "unfair to make Piper and Hartzell proceed to trial in this forum." *Id.*,

at 733. The survivors had brought separate actions in Scotland against the pilot, McDonald, and Air Navigation. "[I]t would be fairer to all parties and less costly if the entire case was presented to one jury with available testimony from all relevant witnesses." *Ibid.* Although the court recognized that if trial were held in the United States, Piper and Hartzell could file indemnity or contribution actions against the Scottish defendants, it believed that there was a significant risk of inconsistent verdicts.[7]

The District Court concluded that the relevant public interests also pointed strongly towards dismissal. The court determined that Pennsylvania law would apply to Piper and Scottish law to Hartzell if the case were tried in the Middle District of Pennsylvania.[8] As a result, "trial in this forum would be hopelessly complex and confusing for a jury." *Id.,* at 734. In addition, the court noted that it was unfamiliar with Scottish law and thus would have to rely upon experts from that country. The court also found that the trial would be enormously costly and time-consuming; that it would be unfair to burden citizens with jury duty when the Middle Dis-

---

[7] The District Court explained that inconsistent verdicts might result if petitioners were held liable on the basis of strict liability here, and then required to prove negligence in an indemnity action in Scotland. Moreover, even if the same standard of liability applied, there was a danger that different juries would find different facts and produce inconsistent results.

[8] Under *Klaxon* v. *Stentor Electric Mfg. Co.,* 313 U. S. 487 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U. S. C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred. *Van Dusen* v. *Barrack,* 376 U. S. 612 (1946). Relying on these two cases, the District Court concluded that California choice-of-law rules would apply to Piper, and Pennsylvania choice-of-law rules would apply to Hartzell. It further concluded that California applied a "governmental interests" analysis in resolving choice-of-law problems, and that Pennsylvania employed a "significant contacts" analysis. The court used the "governmental interests" analysis to determine that Pennsylvania liability rules would apply to Piper, and the "significant contacts" analysis to determine that Scottish liability rules would apply to Hartzell.

trict of Pennsylvania has little connection with the controversy; and that Scotland has a substantial interest in the outcome of the litigation.

In opposing the motions to dismiss, respondent contended that dismissal would be unfair because Scottish law was less favorable. The District Court explicitly rejected this claim. It reasoned that the possibility that dismissal might lead to an unfavorable change in the law did not deserve significant weight; any deficiency in the foreign law was a "matter to be dealt with in the foreign forum." *Id.*, at 738.

## C

On appeal, the United States Court of Appeals for the Third Circuit reversed and remanded for trial. The decision to reverse appears to be based on two alternative grounds. First, the Court held that the District Court abused its discretion in conducting the *Gilbert* analysis. Second, the Court held that dismissal is never appropriate where the law of the alternative forum is less favorable to the plaintiff.

The Court of Appeals began its review of the District Court's *Gilbert* analysis by noting that the plaintiff's choice of forum deserved substantial weight, even though the real parties in interest are nonresidents. It then rejected the District Court's balancing of the private interests. It found that Piper and Hartzell had failed adequately to support their claim that key witnesses would be unavailable if trial were held in the United States: they had never specified the witnesses they would call and the testimony these witnesses would provide. The Court of Appeals gave little weight to the fact that Piper and Hartzell would not be able to implead potential Scottish third-party defendants, reasoning that this difficulty would be "burdensome" but not "unfair," 630 F. 2d, at 162.[9] Finally, the court stated that resolution of the suit

---

[9] The court claimed that the risk of inconsistent verdicts was slight because Pennsylvania and Scotland both adhere to principles of res judicata.

would not be significantly aided by familiarity with Scottish topography, or by viewing the wreckage.

The Court of Appeals also rejected the District Court's analysis of the public interest factors. It found that the District Court gave undue emphasis to the application of Scottish law: "'the mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before the court.'" *Id.*, at 163 (quoting *Hoffman* v. *Goberman*, 420 F. 2d 423, 427 (CA3 1970)). In any event, it believed that Scottish law need not be applied. After conducting its own choice-of-law analysis, the Court of Appeals determined that American law would govern the actions against both Piper and Hartzell.[10] The same choice-of-law analysis apparently led it to conclude that Pennsylvania and Ohio, rather than Scotland, are the jurisdictions with the greatest policy interests in the dispute, and that all other public interest factors favored trial in the United States.[11]

---

[10] The Court of Appeals agreed with the District Court that California choice-of-law rules applied to Piper, and that Pennsylvania choice-of-law rules applied to Hartzell, see n. 8, *supra*. It did not agree, however, that California used a "governmental interests" analysis and that Pennsylvania used a "significant contacts" analysis. Rather, it believed that both jurisdictions employed the "false conflicts" test. Applying this test, it concluded that Ohio and Pennsylvania had a greater policy interest in the dispute than Scotland, and that American law would apply to both Piper and Hartzell.

[11] The court's reasoning on this point is somewhat unclear. It states:

"We have held that under the applicable choice of law rules Pennsylvania and Ohio are the jurisdictions with the greatest policy interest in this dispute. It follows that the other public interest factors that should be considered under the Supreme Court cases of *Gilbert* and *Koster* favor trial in this country rather than Scotland." 630 F. 2d, at 171.

The Court of Appeals concluded as part of its choice-of-law analysis that the United States had the greatest policy interest in the dispute. See n. 10, *supra*. It apparently believed that this conclusion necessarily implied that the *forum non conveniens* public interest factors pointed toward trial in the United States.

In any event, it appears that the Court of Appeals would have reversed even if the District Court had properly balanced the public and private interests. The court stated:

"[I]t is apparent that the dismissal would work a change in the applicable law so that the plaintiff's strict liability claim would be eliminated from the case. But . . . a dismissal for forum non conveniens, like a statutory transfer, 'should not, despite its convenience, result in a change in the applicable law.' Only when American law is not applicable, or when the foreign jurisdiction would, as a matter of its own choice of law, give the plaintiff the benefit of the claim to which she is entitled here, would dismissal be justified." 630 F. 2d, at 163–164 (footnote omitted) (quoting *DeMateos* v. *Texaco, Inc.*, 562 F. 2d 895, 899 (CA3 1977), cert. denied, 435 U. S. 904 (1978)).

In other words, the court decided that dismissal is automatically barred if it would lead to a change in the applicable law unfavorable to the plaintiff.

We granted certiorari in these cases to consider the questions they raise concerning the proper application of the doctrine of *forum non conveniens.* 450 U. S. 909 (1981).[12]

---

[12] We granted certiorari in No. 80–848 to consider the question "[w]hether, in an action in federal district court brought by foreign plaintiffs against American defendants, the plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied if the case were litigated in the district court is more favorable to them than the law that would be applied by the courts of their own nation." We granted certiorari in No. 80–883 to consider the question whether "a motion to dismiss on grounds of *forum non conveniens* [should] be denied whenever the law of the alternate forum is less favorable to recovery than that which would be applied by the district court."

In this opinion, we begin by considering whether the Court of Appeals properly held that the possibility of an unfavorable change in law automatically bars dismissal. Part II, *infra.* Since we conclude that the Court of Appeals erred, we then consider its review of the District Court's *Gilbert* analysis to determine whether dismissal was otherwise appropriate. Part

## II

The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum. The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry.

We expressly rejected the position adopted by the Court of Appeals in our decision in *Canada Malting Co.* v. *Paterson Steamships, Ltd.*, 285 U. S. 413 (1932). That case arose out of a collision between two vessels in American waters. The Canadian owners of cargo lost in the accident sued the Canadian owners of one of the vessels in Federal District Court. The cargo owners chose an American court in large part because the relevant American liability rules were more favorable than the Canadian rules. The District Court dismissed on grounds of *forum non conveniens*. The plaintiffs argued that dismissal was inappropriate because Canadian laws were less favorable to them. This Court nonetheless affirmed:

> "We have no occasion to enquire by what law the rights of the parties are governed, as we are of the opinion

III, *infra.* We believe that it is necessary to discuss the *Gilbert* analysis in order to properly dispose of the cases.

The questions on which certiorari was granted are sufficiently broad to justify our discussion of the District Court's *Gilbert* analysis. However, even if the issues we discuss in Part III are not within the bounds of the questions with respect to which certiorari was granted, our consideration of these issues is not inappropriate. An order limiting the grant of certiorari does not operate as a jurisdictional bar. We may consider questions outside the scope of the limited order when resolution of those questions is necessary for the proper disposition of the case. See *Olmstead* v. *United States*, 277 U. S. 438 (1928); *McCandless* v. *Furlaud*, 293 U. S. 67 (1934); *Redrup* v. *New York*, 386 U. S. 767 (1967).

that, under any view of that question, it lay within the discretion of the District Court to decline to assume jurisdiction over the controversy. . . . '[T]he court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum.'" *Id.*, at 419–420 (quoting *Charter Shipping Co.* v. *Bowring, Jones & Tidy, Ltd.*, 281 U. S. 515, 517 (1930).

The Court further stated that "[t]here was no basis for the contention that the District Court abused its discretion." 285 U.S., at 423.

It is true that *Canada Malting* was decided before *Gilbert*, and that the doctrine of *forum non conveniens* was not fully crystallized until our decision in that case.[13] However, *Gilbert* in no way affects the validity of *Canada Malting*. In-

---

[13] The doctrine of *forum non conveniens* has a long history. It originated in Scotland, see Braucher, The Inconvenient Federal Forum, 60 Harv. L. Rev. 908, 909–911 (1947), and became part of the common law of many States, see *id.*, at 911–912; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum. L. Rev. 1 (1929). The doctrine was also frequently applied in federal admiralty actions. See, *e. g.*, *Canada Malting Co.* v. *Paterson Steamships, Ltd.*; see also Bickel, The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L. Q. 12 (1949). In *Williams* v. *Green Bay & Western R. Co.*, 326 U. S. 549 (1946), the Court first indicated that motions to dismiss on grounds of *forum non conveniens* could be made in federal diversity actions. The doctrine became firmly established when *Gilbert* and *Koster* were decided one year later.

In previous *forum non conveniens* decisions, the Court has left unresolved the question whether under *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), state or federal law of *forum non conveniens* applies in a diversity case. *Gilbert*, 330 U. S., at 509; *Koster*, 330 U. S., at 529; *Williams* v. *Green Bay & Western R. Co., supra*, at 551, 558–559. The Court did not decide this issue because the same result would have been reached in each case under federal or state law. The lower courts in these cases reached the same conclusion: Pennsylvania and California law on *forum non conveniens* dismissals are virtually identical to federal law. See 630 F. 2d, at 158. Thus, here also, we need not resolve the *Erie* question.

deed, by holding that the central focus of the *forum non conveniens* inquiry is convenience, *Gilbert* implicitly recognized that dismissal may not be barred solely because of the possibility of an unfavorable change in law.[14]  Under *Gilbert*, dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice.[15] If substantial weight were given to the possibility of an unfavorable change in law, however, dismissal might be barred even where trial in the chosen forum was plainly inconvenient.

The Court of Appeals' decision is inconsistent with this Court's earlier *forum non conveniens* decisions in another respect.  Those decisions have repeatedly emphasized the need to retain flexibility.  In *Gilbert*, the Court refused to identify specific circumstances "which will justify or require either grant or denial of remedy."  330 U. S., at 508.  Similarly, in *Koster*, the Court rejected the contention that where a trial would involve inquiry into the internal affairs of a foreign corporation, dismissal was always appropriate.  "That is one, but only one, factor which may show convenience." 330 U. S., at 527.  And in *Williams* v. *Green Bay & Western R. Co.*, 326 U. S. 549, 557 (1946), we stated that we would not lay down a rigid rule to govern discretion, and that "[e]ach case turns on its facts."  If central emphasis were

---

[14] See also *Williams* v. *Green Bay & Western R. Co., supra*, at 555, n. 4 (citing with approval a Scottish case that dismissed an action on the ground of *forum non conveniens* despite the possibility of an unfavorable change in law).

[15] In other words, *Gilbert* held that dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law.  This is precisely the situation in which the Court of Appeals' rule would bar dismissal.

placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable.

In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper.

Except for the court below, every Federal Court of Appeals that has considered this question after *Gilbert* has held that dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. See, *e. g.*, *Pain* v. *United Technologies Corp.*, 205 U. S. App. D. C. 229, 248–249, 637 F. 2d 775, 794–795 (1980); *Fitzgerald* v. *Texaco, Inc.*, 521 F. 2d 448, 453 (CA2 1975), cert. denied, 423 U. S. 1052 (1976); *Anastasiadis* v. *S.S. Little John*, 346 F. 2d 281, 283 (CA5 1965), cert. denied, 384 U. S. 920 (1966).[16] Several courts have relied expressly on *Canada Malting* to hold that the possibility of an unfavorable change of law should not, by itself, bar dismissal. See *Fitz-*

---

[16] Cf. *Dahl* v. *United Technologies Corp.*, 632 F. 2d 1027, 1032 (CA3 1980) (dismissal affirmed where "Norwegian substantive law will predominate the trial of this case and the mere presence of a count pleaded under Connecticut law but which may have little chance of success does not warrant a different conclusion"). But see *DeMateos* v. *Texaco, Inc.*, 562 F. 2d 895, 899 (CA3 1977) (dictum) (principle that § 1404(a) transfer should not result in change in law is no less applicable to dismissal on grounds of *forum non conveniens*), cert. denied, 435 U. S. 904 (1978). The court below relied on the dictum in *DeMateos* in reaching its decision. See *infra*, at 253–254.

*gerald* v. *Texaco, Inc.*, *supra; Anglo-American Grain Co.* v. *The S/T Mina D'Amico*, 169 F. Supp. 908 (ED Va. 1959).

The Court of Appeals' approach is not only inconsistent with the purpose of the *forum non conveniens* doctrine, but also poses substantial practical problems. If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions. First, the trial court would have to determine what law would apply if the case were tried in the chosen forum, and what law would apply if the case were tried in the alternative forum. It would then have to compare the rights, remedies, and procedures available under the law that would be applied in each forum. Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum. The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law. As we stated in *Gilbert*, the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself." 330 U. S., at 509.

Upholding the decision of the Court of Appeals would result in other practical problems. At least where the foreign plaintiff named an American manufacturer as defendant,[17] a court could not dismiss the case on grounds of *forum non*

---

[17] In fact, the defendant might not even have to be American. A foreign plaintiff seeking damages for an accident that occurred abroad might be able to obtain service of process on a foreign defendant who does business in the United States. Under the Court of Appeals' holding, dismissal would be barred if the law in the alternative forum were less favorable to the plaintiff—even though none of the parties are American, and even though there is absolutely no nexus between the subject matter of the litigation and the United States.

*conveniens* where dismissal might lead to an unfavorable change in law. The American courts, which are already extremely attractive to foreign plaintiffs,[18] would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts.[19]

---

[18] First, all but 6 of the 50 American States—Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming—offer strict liability. 1 CCH Prod. Liability Rep. § 4016 (1981). Rules roughly equivalent to American strict liability are effective in France, Belgium, and Luxembourg. West Germany and Japan have a strict liability statute for pharmaceuticals. However, strict liability remains primarily an American innovation. Second, the tort plaintiff may choose, at least potentially, from among 50 jurisdictions if he decides to file suit in the United States. Each of these jurisdictions applies its own set of malleable choice-of-law rules. Third, jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions. G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969). Even in the United Kingdom, most civil actions are not tried before a jury. 1 G. Keeton, The United Kingdom: The Development of its Laws and Constitutions 309 (1955). Fourth, unlike most foreign jurisdictions, American courts allow contingent attorney's fees, and do not tax losing parties with their opponents' attorney's fees. R. Schlesinger, Comparative Law: Cases, Text, Materials 275–277 (3d ed. 1970); Orban, Product Liability: A Comparative Legal Restatement—Foreign National Law and the EEC Directive, 8 Ga. J. Int'l & Comp. L. 342, 393 (1978). Fifth, discovery is more extensive in American than in foreign courts. R. Schlesinger, *supra*, at 307, 310, and n. 33.

[19] In holding that the possibility of a change in law unfavorable to the plaintiff should not be given substantial weight, we also necessarily hold that the possibility of a change in law favorable to defendant should not be considered. Respondent suggests that Piper and Hartzell filed the motion to dismiss, not simply because trial in the United States would be inconvenient, but also because they believe the laws of Scotland are more favorable. She argues that this should be taken into account in the analysis of the private interests. We recognize, of course, that Piper and Hartzell may be engaged in reverse forum-shopping. However, this possibility ordinarily should not enter into a trial court's analysis of the private interests. If the defendant is able to overcome the presumption in favor of plaintiff by showing that trial in the chosen forum would be unnecessarily

The Court of Appeals based its decision, at least in part, on an analogy between dismissals on grounds of *forum non conveniens* and transfers between federal courts pursuant to § 1404(a). In *Van Dusen* v. *Barrack*, 376 U. S. 612 (1964), this Court ruled that a § 1404(a) transfer should not result in a change in the applicable law. Relying on dictum in an earlier Third Circuit opinion interpreting *Van Dusen*, the court below held that that principle is also applicable to a dismissal on *forum non conveniens* grounds. 630 F. 2d, at 164, and n. 51 (citing *DeMateos* v. *Texaco, Inc.*, 562 F. 2d, at 899). However, § 1404(a) transfers are different than dismissals on the ground of *forum non conveniens*.

Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens*, see Revisor's Note, H. R. Rep. No. 308, 80th Cong., 1st Sess., A132 (1947); H. R. Rep. No. 2646, 79th Cong., 2d Sess., A127 (1946), it was intended to be a revision rather than a codification of the common law. *Norwood* v. *Kirkpatrick*, 349 U. S. 29 (1955). District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*. *Id.*, at 31–32.

The reasoning employed in *Van Dusen* v. *Barrack* is simply inapplicable to dismissals on grounds of *forum non conveniens*. That case did not discuss the common-law doctrine. Rather, it focused on "the construction and application" of § 1404(a). 376 U. S., at 613.[20] Emphasizing the re-

---

burdensome, dismissal is appropriate—regardless of the fact that defendant may also be motivated by a desire to obtain a more favorable forum. Cf. *Kloeckner Reederei und Kohlenhandel* v. *A/S Hakedal*, 210 F. 2d 754, 757 (CA2) (defendant not entitled to dismissal on grounds of *forum non conveniens* solely because the law of the original forum is less favorable to him than the law of the alternative forum), cert. dism'd by stipulation, 348 U. S. 801 (1954).

[20] *Barrack* at least implicitly recognized that the rule it announced for transfer under § 1404(a) was not the common-law rule. It cited several de-

medial purpose of the statute, *Barrack* concluded that Congress could not have intended a transfer to be accompanied by a change in law. *Id.*, at 622. The statute was designed as a "federal housekeeping measure," allowing easy change of venue within a unified federal system. *Id.*, at 613. The Court feared that if a change in venue were accompanied by a change in law, forum-shopping parties would take unfair advantage of the relaxed standards for transfer. The rule was necessary to ensure the just and efficient operation of the statute.[21]

We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice.[22] In these cases, however, the remedies that

---

cisions under § 1404(a) in which lower courts had been "strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws." 376 U. S., at 630, n. 26. These decisions frequently rested on the assumption that a change in law would have been unavoidable under common law *forum non conveniens*, but could be avoided under § 1404(a). See, *e. g.*, *Greve* v. *Gibraltar Enterprises, Inc.*, 85 F. Supp. 410, 414 (NM 1949).

[21] The United States Court of Appeals for the Second Circuit has expressly rejected the contention that rules governing transfers pursuant to § 1404(a) also govern *forum non conveniens* dismissals. *Schertenleib* v. *Traum*, 589 F. 2d 1156 (1978).

[22] At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. *Gilbert*, 330 U.S., at 506–507. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. Cf. *Phoenix Canada Oil Co.*

would be provided by the Scottish courts do not fall within this category. Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.

## III

The Court of Appeals also erred in rejecting the District Court's *Gilbert* analysis. · The Court of Appeals stated that more weight should have been given to the plaintiff's choice of forum, and criticized the District Court's analysis of the private and public interests. However, the District Court's decision regarding the deference due plaintiff's choice of forum was appropriate. Furthermore, we do not believe that the District Court abused its discretion in weighing the private and public interests.

## A

The District Court acknowledged that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. It held, however, that the presumption applies with less force when the plaintiff or real parties in interest are foreign.

The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster*, the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. 330 U. S., at 524.[23] When the home forum has

*Ltd.* v. *Texaco, Inc.*, 78 F. R. D. 445 (Del. 1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorean tribunal will hear the case, and there is no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted).

[23] In *Koster*, we stated that "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will

been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.[24]

normally outweigh the inconvenience the defendant may have shown." 330 U. S., at 524. See also *Swift & Co. Packers* v. *Compania Colombiana del Caribe*, 339 U. S. 684, 697 (1950) ("suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners"); *Canada Malting Co.* v. *Paterson Steamships, Ltd.*, 285 U. S., at 421 ("[t]he rule recognizing an unqualified discretion to decline jurisdiction in suits in admiralty between foreigners appears to be supported by an unbroken line of decisions in the lower federal courts").

As the District Court correctly noted in its opinion, 479 F. Supp., at 731; see also n. 10, *supra*, the lower federal courts have routinely given less weight to a foreign plaintiff's choice of forum. See, *e. g.*, *Founding Church of Scientology* v. *Verlag*, 175 U. S. App. D. C. 402, 408, 536 F. 2d 429, 435 (1976); *Paper Operations Consultants Int'l, Ltd.* v. *SS Hong Kong Amber*, 513 F. 2d 667, 672 (CA9 1975); *Fitzgerald* v. *Texaco, Inc.*, 521 F. 2d 448, 451 (CA2 1975), cert. denied, 423 U. S. 1052 (1976); *Mobil Tankers Co.* v. *Mene Grande Oil Co.*, 363 F. 2d 611, 614 (CA3), cert. denied, 385 U. S. 945 (1966); *Ionescu* v. *E. F. Hutton & Co. (France)*, 465 F. Supp. 139 (SDNY 1979); *Michell* v. *General Motors Corp.*, 439 F. Supp. 24, 27 (ND Ohio 1977).

A citizen's forum choice should not be given dispositive weight, however. See *Pain* v. *United Technologies Corp.*, 205 U. S. App. D. C. 229, 252–253, 637 F. 2d 775, 796–797 (1980); *Mizokami Bros. of Arizona, Inc.* v. *Baychem Corp.*, 556 F. 2d 975 (CA9 1977), cert. denied, 434 U. S. 1035 (1978). Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

[24] See *Pain* v. *United Technologies Corp.*, *supra*, at 253, 637 F. 2d, at 797 (citizenship and residence are proxies for convenience); see also Note, Forum Non Conveniens and American Plaintiffs in the Federal Courts, 47 U. Chi. L. Rev. 373, 382–383 (1980).

Respondent argues that since plaintiffs will ordinarily file suit in the ju-

## B

The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. *Gilbert*, 330 U. S., at 511–512; *Koster*, 330 U. S., at 531. Here, the Court of Appeals expressly acknowledged that the standard of review was one of abuse of discretion. In examining the District Court's analysis of the public and private interests, however, the Court of Appeals seems to have lost sight of this rule, and substituted its own judgment for that of the District Court.

## (1)

In analyzing the private interest factors, the District Court stated that the connections with Scotland are "overwhelming." 479 F. Supp., at 732. This characterization may be somewhat exaggerated. Particularly with respect to the question of relative ease of access to sources of proof, the private interests point in both directions. As respondent emphasizes, records concerning the design, manufacture, and testing of the propeller and plane are located in the United States. She would have greater access to sources of proof relevant to her strict liability and negligence theories if trial were held here.[25] However, the District Court did not act

---

risdiction that offers the most favorable law, establishing a strong presumption in favor of both home and foreign plaintiffs will ensure that defendants will always be held to the highest possible standard of accountability for their purported wrongdoing. However, the deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case. See *supra*, at 247–250.

[25] In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims.

unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland. A large proportion of the relevant evidence is located in Great Britain.

The Court of Appeals found that the problems of proof could not be given any weight because Piper and Hartzell failed to describe with specificity the evidence they would not be able to obtain if trial were held in the United States. It suggested that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. Such detail is not necessary.[26] Piper and Hartzell have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion. Of course, defendants must provide enough information to enable the District Court to balance the parties' interests. Our examination of the record convinces us that sufficient in-

---

[26] The United States Court of Appeals for the Second Circuit has expressly rejected such a requirement. *Fitzgerald* v. *Texaco, Inc., supra,* at 451, n. 3. In other cases, dismissals have been affirmed despite the failure to provide detailed affidavits. See *Farmanfarmaian* v. *Gulf Oil Corp.,* 437 F. Supp. 910, 924 (SDNY 1977), aff'd., 588 F. 2d 880 (CA2 1978). And in a decision handed down two weeks after the decision in this case, another Third Circuit panel affirmed a dismissal without mentioning such a requirement. See *Dahl* v. *United Technologies Corp.,* 632 F. 2d 1027 (1980).

The Court of Appeals apparently relied on an analogy to motions to transfer under 28 U. S. C. § 1404(a). 630 F. 2d, at 160–161. It cited *Marbury-Pattillo Construction Co.* v. *Bayside Warehouse Co.,* 490 F. 2d 155, 158 (CA5 1974), and *Texas Gulf Sulphur Co.* v. *Ritter,* 371 F. 2d 145, 148 (CA10 1967), which suggest an affidavit requirement in the § 1404(a) context. As we have explained, however, dismissals on grounds of *forum non conveniens* and § 1404(a) transfers are not directly comparable. See *supra,* at 253–254.

formation was provided here. Both Piper and Hartzell submitted affidavits describing the evidentiary problems they would face if the trial were held in the United States.[27]

The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland. Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is true, of course, that if Hartzell and Piper were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial. The Court of Appeals rejected this argument. Forcing petitioners to rely on actions for indemnity or contributions would be "burdensome" but not "unfair." 630 F. 2d, at 162. Finding that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on grounds of *forum non conveniens*.[28]

### (2)

The District Court's review of the factors relating to the public interest was also reasonable. On the basis of its

---

[27] See Affidavit of Ronald C. Scott, App. to Pet. for Cert. of Hartzell Propeller, Inc., A75; Affidavit of Charles J. McKelvey, App. to Pet. for Cert. of Piper Aircraft Co. 1f. The affidavit provided to the District Court by Piper states that it would call the following witnesses: the relatives of the decedents; the owners and employees of McDonald; the persons responsible for the training and licensing of the pilot; the persons responsible for servicing and maintaining the aircraft; and two or three of its own employees involved in the design and manufacture of the aircraft.

[28] See *Pain* v. *United Technologies Corp.*, 205 U. S. App. D. C., at 244, 637 F. 2d, at 790 (relying on similar argument in approving dismissal of action arising out of helicopter crash that took place in Norway).

choice-of-law analysis, it concluded that if the case were tried in the Middle District of Pennsylvania, Pennsylvania law would apply to Piper and Scottish law to Hartzell. It stated that a trial involving two sets of laws would be confusing to the jury. It also noted its own lack of familiarity with Scottish law. Consideration of these problems was clearly appropriate under *Gilbert;* in that case we explicitly held that the need to apply foreign law pointed towards dismissal.[29] The Court of Appeals found that the District Court's choice-of-law analysis was incorrect, and that American law would apply to both Hartzell and Piper. Thus, lack of familiarity with foreign law would not be a problem. Even if the Court of Appeals' conclusion is correct, however, all other public interest factors favored trial in Scotland.

Scotland has a very strong interest in this litigation. The accident occurred in its airspace. All of the decedents were Scottish. Apart from Piper and Hartzell, all potential plaintiffs and defendants are either Scottish or English. As we stated in *Gilbert*, there is "a local interest in having localized controversies decided at home." 330 U. S., at 509. Respondent argues that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, and that additional deterrence might be obtained if Piper and Hartzell were tried in the United States, where they could be sued on the basis of both negligence and strict liability. However, the incremental deterrence that would be gained if this trial were held in an

---

[29] Many *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal. See, *e. g., Calavo Growers of California* v. *Belgium,* 632 F. 2d. 963, 967 (CA2 1980), cert. denied, 449 U. S. 1084 (1981); *Schertenleib* v. *Traum,* 589 F. 2d, at 1165. Of course, this factor alone is not sufficent to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. See, *e. g., Founding Church of Scientology* v. *Verlag,* 175 U. S. App. D. C., at 409, 536 F. 2d, at 436; *Burt* v. *Isthmus Development Co.,* 218 F. 2d 353, 357 (CA5), cert. denied, 349 U. S. 922 (1955).

American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judical time and resources that would inevitably be required if the case were to be tried here.

## IV

The Court of Appeals erred in holding that the possibility of an unfavorable change in law bars dismissal on the ground of *forum non conveniens*. It also erred in rejecting the District Court's *Gilbert* analysis. The District Court properly decided that the presumption in favor of the respondent's forum choice applied with less than maximum force because the real parties in interest are foreign. It did not act unreasonably in deciding that the private interests pointed towards trial in Scotland. Nor did it act unreasonably in deciding that the public interests favored trial in Scotland. Thus, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE POWELL took no part in the decision of these cases.

JUSTICE O'CONNOR took no part in the consideration or decision of these cases.

JUSTICE WHITE, concurring in part and dissenting in part.

I join Parts I and II of the Court's opinion. However, like JUSTICE BRENNAN and JUSTICE STEVENS, I would not proceed to deal with the issues addressed in Part III. To that extent, I am in dissent.

JUSTICE STEVENS, with whom JUSTICE BRENNAN joins, dissenting.

In No. 80–848, only one question is presented for review to this Court:

> "Whether, in an action in federal district court brought by foreign plaintiffs against American defendants, the plaintiffs may defeat a motion to dismiss on the ground of

*forum non conveniens* merely by showing that the substantive law that would be applied if the case were litigated in the district court is more favorable to them than the law that would be applied by the courts of their own nation." Pet. for Cert. in No. 80–848, p. i.

In No. 80–883, the Court limited its grant of certiorari, see 450 U. S. 909, to the same question:

> "Must a motion to dismiss on grounds of *forum non conveniens* be denied whenever the law of the alternate forum is less favorable to recovery than that which would be applied by the district court?" Pet. for Cert. in No. 80–883, p. i.

I agree that this question should be answered in the negative. Having decided that question, I would simply remand the case to the Court of Appeals for further consideration of the question whether the District Court correctly decided that Pennsylvania was not a convenient forum in which to litigate a claim against a Pennsylvania company that a plane was defectively designed and manufactured in Pennsylvania.